# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| SHARON WHITE, | : | Case No. 3:16-cv-00457 |
| | : | |
| Plaintiff, | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| NANCY A. BERRYHILL, | : | |
| Commissioner of the Social Security | : | |
| Administration, | : | |
| | : | |
| Defendant. | | |

# DECISION AND ENTRY

## I.  Introduction

Plaintiff Sharon White applied for Supplemental Security Income in December 2013, asserting that she could no longer work due to her health problems and their negative impact upon her. A social security Administrative Law Judge (ALJ), Anne Sharrard, determined that Plaintiff's health problems did not constitute a "disability" as defined by the Social Security Act. She therefore denied Plaintiff's application.

Plaintiff brings the present case challenging ALJ Sharrard's decision. She identifies three main issues: Whether the ALJ erred in conducting a proper pain analysis under Sixth Circuit Precedent; whether the ALJ erred in her assessment of Plaintiff's residual functional capacity[1]; and, whether new and material evidence warrants remand. (Doc. #11, *PageID*

---

[1] Residual functional capacity is an assessment of the most Plaintiff could do despite her impairments. *See*

#936).

The Commissioner argues that an Order affirming ALJ Sharrard's decision is warranted because substantial evidence supports her assessment of Plaintiff's residual functional capacity and her findings regarding Plaintiff's lack of credibility. The Commissioner further contends that a remand is not warranted under sentence six of 42 U.S.C. § 405(g).

**II.     Background**

Plaintiff was 51 years old on the date she filed her application for Supplemental Security Income. This placed her in the Social Security Administration's category of a person closely approaching advanced age. 20 C.F.R. § 416.963(d). She has a high school education and worked in the past as an auto-parts-assembly worker and an instrument technician.

Plaintiff testified during a hearing before ALJ Sharrard that she is unable to work due to constant pain. (Doc. #8, *PageID* # 97). If she walks for 30 to 40 minutes, her "legs just start shaking." *Id*. She returns home because her legs feel like they "are about to collapse." *Id*. She then needs to lie in bed for 2 days before she can attempt again to walk for that length of time. *Id*. at 98.

She has severe low-back pain with numbness in her leg, occasional neck pain, and severe headaches. *Id*. at 100, 108-09. She explained, "I'm in constant pain all the time … all day long. All day long. It's ever since the [car] accident is nothing but pain. It's a

---

*Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

horrible life." *Id*. at 108. She rated her average pain a 7 out of a scale of 0 to 10 (no pain to serious pain requiring a hospital visit). *Id*. at 113. Plaintiff's pain wakes her up at twice a night. *Id*. at 116. Due to her pain, Plaintiff testified that she stays in bed most of the time. *Id.* at 103. Specifically, Plaintiff testified that at least 3 times a week she will lie in bed for 6 hours or more due to pain. *Id*. at 110-111.

To treat her pain, Plaintiff has participated in physical therapy, takes prescription medications, and was given a cream to apply for pain. *Id*. at 99, 107-08. In addition, she exercises at home. But, her pain returns as soon as she completes physical therapy, and if she pushes herself to hard, she will get re-injured and lie in bed for 2 days. *Id*. at 100. Plaintiff testified that medications make her unable to think straight and unable to drive. *Id*. at 114. She also testified that she has been prescribed medical devices, a cane and a back brace, to assist her. *Id*. at 111-12. While she has needed a cane since 2013, and had been previously offered one, she was unable to afford it and could only obtain one when her insurance agreed to pay. *Id*. at 112.

During the day, Plaintiff vacuums a little but this increases her pain, so she does not vacuum her home enough. She grocery shops once a month with her mother and brother, but she does not carry any grocery bags. *Id*. at 105.

Plaintiff testified that she can sit for 5 to 10 minutes before having to move. She can lift 5 pounds. *Id*. at 106, 113-114. She does not like to be around crowds and does not like anyone to come near her. She noted, "I'm just miserable." *Id*. at 110. She also mentioned that, in addition to pain, the reason she could not remain employed at Walmart was her lack of patience. *Id*. at 123-24. Plaintiff worked at Walmart from

November 2012 to February 2013. *Id*. at 257.

As to the medical evidence of record, Plaintiff has provided a detailed description of those records, and the Commissioner relies on the ALJ's detailed description. There is no need to repeat their cogent descriptions, and the most pertinent evidence will be discussed when addressing the parties' arguments.

## III. The ALJ's Decision

Plaintiff's eligibility to receive Supplemental Security hinged on whether she was under a "disability" as defined under social security law. *See* 42 U.S.C. §§ 423(d)(1)(A)-(d)(2)(A), 1381a; *see also Bowen v. City of New York*, 476 U.S. 467, 470 (1986). To determine if she was under such a disability, ALJ Sharrard evaluated the evidence under the Social Security Administration's 5-step procedure. 20 C.F.R. §§ 416.920(a)(4). Moving through step 1, the ALJ found at steps 2 and 3 that Plaintiff's impairments—including her severe impairments of—"degenerative disc disease of lumbar spine, osteoarthritis, depression, and adjustment disorder with mixed emotional features—did not automatically entitle her to benefits. (Doc. #8, *PageID* #s 63-70).

At step 4, the ALJ found that the most Plaintiff could do despite her impairments—her residual functional capacity, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002)—was light work except:

> she can sit for six hours and stand and/or walk for six hours. She can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, stoop, crouch, kneel, crawl, and balance. She can occasionally reach overhead with either upper extremity. She is limited to simple and repetitive tasks in a low stress job, defined as having only occasional changes in the work setting and only occasional decision-making required. She cannot perform production-pace work, such as assembly line work, but can perform

4

>     goal-oriented work to complete by the end of a shift. She can occasionally
>     interact with supervisors, co-workers, and the general public.

(Doc. #8, *PageID* #70). The ALJ also found at step 4 that Plaintiff could not perform her past relevant work. At step 5, the ALJ concluded that Plaintiff could perform a significant number of available jobs. *Id*. at 70-74. This led ALJ Sharrard to conclude, in the end, that Plaintiff was not under a disability and not entitled to benefits. *Id*.

**IV.     Standard of Review**

The present review of ALJ Sharrard's decision determines whether she applied the correct legal standards and whether substantial evidence supports her findings. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). If she failed to apply the correct legal criteria, her decision may be fatally flawed even if the record contains substantial evidence supporting her findings. *Rabbers*, 582 F.3d at 651; *see Bowen*, 478 F.3d at 746; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004). Substantial evidence supports a finding when "a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance ...." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

## V. Discussion

### A. <u>New and Material Evidence</u>

The first potentially dispositive issue is whether Plaintiff is entitled to remand based on the medical evidence she both obtained and submitted to the Social Security Administration's Appeals Council after the ALJ issued her decision.

Under sentence 6 of 42 U.S.C. § 405(g), a court can "remand the case for further administrative proceedings in light of the new evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Cline v. Comm'r of Soc. Sec.,* 96 F.3d 146, 148 (6th Cir. 1996) (citing *Cotton v. Sullivan,* 2 F.3d 692, 695-96 (6th Cir. 1993)).

> [E]vidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finkelstein,* 496 U.S. 617, 626, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990). Such evidence is "material" only if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.,* 865 F.2d 709, 711 (6th Cir. 1988). A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. *Willis v. Sec'y of Health & Human Servs.,* 727 F.2d 551, 554 (1984) (per curiam). … [T]he burden of showing that a remand is appropriate is on the claimant. *Oliver v. Sec'y of Health & Human Servs.,* 804 F.2d 964, 966 (6th Cir. 1986).

*Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Plaintiff bears the burden of demonstrating that a sentence-6 remand is proper. *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 653 (6th Cir. 2009); *see also Oliver v. Sec'y of Health and Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).

The evidence at issue consists of a February 2016 referral of Plaintiff to a pain clinic (Doc. #8, *PageID*#45), and a report concerning the results of a three-phase NM bone scan

6

performed on May 19, 2016, *id*. at 47-48.  The bone scan revealed widespread degenerative changes in both her hips, in her L5 vertebral lumbar, and in both her shoulders, knees, ankles, and feet.  *Id*.  Given that this evidence did not exist until 2016, it post-dates the ALJ's decision on December 17, 2015.  Because the evidence did not exist at the time of the ALJ's hearing or decision, it constitutes "new" evidence.

The evidence is also "material" because it is objective evidence concerning significant abnormalities in Plaintiff's hips, L5 vertebra, shoulders, knees, ankles, and feet.  The ALJ, moreover, pointed to the lack of objective evidence and the fact that Plaintiff had not been referred to a pain clinic as reasons for not fully crediting her testimony.  *Id*. at 71-72.  The high significance the ALJ placed on the absence of evidence tends to show how significant she thought it could be.  This, together with results of the bone scan, show a reasonable probability that remand the Commissioner, or the ALJ, would have reached a different disposition of Plaintiff's application for benefits if presented with the new evidence. *See Foster*, 279 F.3d at 357.

It thus remains whether "good cause"—a reasonable explanation—excuses Plaintiff's failure to submit the evidence to the ALJ before she issued her decision. *See Cline,* 96 F.3d at 148.

Plaintiff points that the evidence at issue was submitted to the Social Security Administration's Appeals Council after the ALJ's hearing and did not exist before the ALJ issued her decision. These facts, however, do not constitute "good cause" sufficient to warrant a sentence 6 remand.  S*ee Oliver*, 804 F.2d at 966.  Plaintiff must go further.  She must identify a "valid reason," beyond its non-existence, for not obtaining and submitting

the evidence to the ALJ before she issued her decision. *See id*. Because Plaintiff does not advance a valid reason or a reasonable justification for not submitting the evidence to the ALJ before she issued her decision. She has, therefore not shown good cause. *See Foster*, 279 F.3d at 357.

## B. Plaintiff's Credibility

Plaintiff contends that the ALJ failed to properly evaluate the credibility of her statements about her pain. Plaintiff correctly points out that the Commissioner's most recent Ruling concerning the evaluation of an applicant's symptoms, Social Sec. R. 16-3p, 2016 WL 1119029 (Mar. 16, 2016), supersedes its predecessor Ruling, Social Sec. R. 96–7p, 1996 WL 374186 (July 2, 1996). Plaintiff indicates that the more recent Ruling appears to apply retroactively to decisions predating March 2016. This is incorrect.

In October 2017, the Social Security Administration republished Ruling 16-3 to clarify that ALJs will apply its most recent Ruling on or after March 26, 2016. The Administration further noted, "When a federal court reviews our final decision in a claim, we also explain that we expect the court to review the final decision using the rules that were in effect at the time we issued the decision using the rules that were in effect at the time we issued the [ALJ's] decision under review." Soc. Sec. R. 16-3p, 82 FR 49462-03 (Oct. 25, 2017). This expectation is eminently reasonable since it would be unfair, if not nonsensical, to review an ALJ's credibility determinations under legal criteria not in effect at the time of the ALJ's decision. Consequently, in the present case, Ruling 96-7p applies to the ALJ's December 2015 decision. *Smith v. Colvin*, 3:15cv384, 2017 WL 427359, at *10 (S.D. Ohio, 2017) (Ovington, M.J.) Report & Recommendation *adopted*, 2017 WL 929163

8

(March 8, 2017) (Rice, D.J.); *see Stump v. Comm'r of Soc. Sec.*, 3:16cv460, 2018 WL 328962, at *4 (S.D. Ohio, 2018) (Newman, M.J.) Report & Recommendation *adopted* 2018 WL 684764 (Feb. 2, 2018) (Rose, D.J.); s*ee also Watts v. Comm'r of Soc. Sec.,* No. 1:16cv319, 2017 WL 430733, at *10, n. 5 (S.D. Ohio Jan. 31, 2017) (Litkovitz, M.J.) Report & Recommendation *adopted,* 2017 WL 680538 (Feb. 21, 2017) (Barrett, D.J.).

Plaintiff argues that she satisfies the legal standards under Ruling 96-7p for evaluating her pain and the ALJ's reasons for finding her pain testimony less than fully credible do not survive scrutiny (under either Ruling 96-7p or 16-3p). She first relies on the fact that Dr. Morris Brown, her primary caretaker, diagnosed her with medically determinable impairments that could produce pain symptoms, including hip pain, low-back pain, acute bursitis, lumbar radiculopathy, and pain in her pelvis. Dr. Brown also noted tenderness to palpation in Plaintiff's hips and low back, decreased sensation in the inguinal area, back spasm, and greater-trochanter tenderness. Plaintiff further relies on the results of an MRI showing degenerative changes in her spine (L5-S1), probable significant bilateral neuro foraminal narrowing at this level, and widespread degenerative changes in both her hips, ankles, feet, knees, and shoulders. And, Plaintiff contends that she provided ample testimony detailing her pain symptoms and side effects.

"There is no question that subjective complaints of a claimant can support a claim for disability, if there is also objective medical evidence of an underlying medical condition in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). ALJs, however, are not required to accept as credible a claimant's subjective reports of pain and other symptoms and "may properly consider the credibility of the claimant." *Walters v.*

9

*Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citation omitted); *see Jones*, 336 F.3d at 476. An ALJ's credibility findings "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531 (citations omitted).

Plaintiff's argument, that the ALJ did not properly assess her subjective statements about the intensity, persistence and limiting effects of his symptoms, is without merit. The ALJ documented objective evidence showing that Plaintiff had mild abnormalities. For example, soon after Plaintiff's February 2013 car accident, x-ray images showed no subluxation and well-maintained vertebral heights of the cervical and lumbar spine. (Doc. #8, *PageID* #s 71, 519-22). A physical examination at the emergency room demonstrated paralumbar tenderness, but she had good range of motion in all joints, no tenderness to palpation, normal sensory function, no focal deficits, and no edema. *Id*. at 513. X-ray images taken 2 years later, in February 2015, showed only mild progression of facet disease at L5-S1 as compared to the February 2013 x-rays, and demonstrated normal lumbar spine curvature, no listhesis, normal joints, and normal vertebral body heights. *Id*. at 71-72, 868. These tests results provide a reasonable ground for the ALJ's credibility determination. *See Downs v. Comm'r of Soc. Sec*., 634 F. App'x 551, 553 (6th Cir. 2016) (ALJ appropriately relied on mild to moderate diagnostic findings to support an assessment of residual functional capacity at light work).

A physical exam in February 2015 showed only mild tenderness in Plaintiff's lumbar spine; negative straight-leg-raise test; no redness, swelling or ecchymosis noted; normal

motor function; normal sensory function; and no focal deficits. (Doc. #8, *PageID* #s 872-73). In June 2015, Dr. Brown reported that Plaintiff was "ambulating normally"; had normal tone, normal motor strength, normal back curvature and range of motion; and had no muscle spasm. *Id*. at 67, 882. Such unremarkable objective and clinical findings undermine Plaintiff's descriptions of debilitating physical impairments. *See Crouch v. Sec'y of HHS*, 909 F.2d 852, 856-57 (6th Cir. 1990) ("the absence of any significant neurological deficits and atrophy supports the Secretary's conclusion [that Plaintiff was not disabled] . . . ."). Indeed, Dr. Bolz and Dr. Gardner supported this in their statements that Plaintiff was only partially credible as her reports were inconsistent with only mild abnormalities. (Doc. #8, *PageID* #s 131-32, 145). As the ALJ so aptly put it, "the objective medical evidence does not support the debilitating back pain the claimant has alleged since her car accident." *Id*. at 71-72.

Additionally, in accordance with the regulations, the ALJ discussed Plaintiff's testimony regarding the frequency and intensity of her symptoms, her medications and side effects, and her treatment history. *Id*. at 63-74. The ALJ found Plaintiff's testimony less than fully credible because other evidence did not support complaints of the severity she alleged. For example, the ALJ noted that Plaintiff did not seek any treatment for her mental health impairments. *Id*. at 72-73. It was proper for the ALJ to consider this. *See* Ruling 96-7p, 1996 WL374186 ("the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints"). Likewise, with regard to her back pain, the ALJ noted that the record was devoid of a referral for surgical treatment or pain management, which indicated that her symptoms were not as debilitating

11

as she claimed. (Doc. #8, *PageID* # 72). Although not dispositive by themselves, these were reasonable considerations in the ALJ's credibility assessment.

Plaintiff also obtained favorable results when she participated in physical therapy. For example, the ALJ noted that Plaintiff has had "very positive responses to physical therapy, only to relapse when away from formal training sessions." *Id*. at 72. This was a proper consideration. *Cf.* 20 C.F.R. § 416.930(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled"). The ALJ specifically noted that in "August 2013, she had met six out of her seven goals including reducing her back pain to 2-3 out of 10." *Id*. at 72, 362-363; *cf. Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002) ("[Plaintiff's] own estimate is that his pain reaches a level of 3 on a scale of 0 to 10, and this does not sound disabling."). And, the ALJ noted that 1 year later, Plaintiff again showed improvement toward most of her goals, including reduction in hip and groin pain, improving her posture, and reporting no neck pain. (Doc. #8, *PageID* #s 72, 711, 739); *cf. Eddy v. Comm'r of Soc. Sec*, 506 F. App'x 508, 509 (6th Cir. 2012) (ALJ properly considered that treatment had stabilized or improved a claimant's condition). The ALJ also discussed that on her second round of physical therapy, Plaintiff again reported improvement. Yet, she quit before completing her treatment. (Doc. #8, *PageID* #s 72, 740). *Cf.* 20 C.F.R. § 416.930(a) ("What treatment you must follow. In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work.")

Finally, the ALJ properly considered Plaintiff's ability to engage in certain daily activities when determining if her complaints of debilitating pain were entirely credible. *See*

12

*Warner*, 375 F.3d at 392 ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain."); *see also* Soc. Sec. Ruling 96-7p, 1996 WL 374186. The ALJ noted, for instance, that Plaintiff testified about enjoying long walks for exercise, and she tried to walk daily, or every other day, for 30 to 40 minutes. (Doc. #8, *PageID* #s 69, 72, 97-98). In the context of the other substantial evidence referenced above, this reasonably suggests she could perform light work as the ALJ found.

Accordingly, Plaintiff's challenges to the ALJ's evaluation of her credibility and symptoms lack merit.

### C. <u>Plaintiff's Need For A Cane</u>

Plaintiff contends that the ALJ erred by not incorporating her need for a can into the assessment of her residual functional capacity. Plaintiff emphasizes that Dr. Brown, her primary care provided, prescribed a cane for her. The record thus, according to Plaintiff, documents more than Plaintiff's subjective desire to use a cane; it documents her medical necessity to use a cane.

Under the Rulings, "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (*i.e.*, whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." Soc. Sec. R. 96-9p, 1996 WL 374185, at *7 (July 2, 1996).

Plaintiff relies on a Durable Equipment Order Dr. Brown signed in July 2015. (Doc. #8, *PageID* #s 907-08). This Order reported Plaintiff's diagnoses as her hip pain and pain in

her pelvic joint and thigh. *Id*. at 908. The Order, however, falls short. Dr. Brown does not state why the cane is needed. *See id*. Is it to help with walking, or balance, or standing? Similarly, Dr. Brown's Order does specify when Plaintiff needs to use a cane. Is it for only for use outside the house or on uneven surfaces or transferring from sitting to standing? Even if this Order form were construed as a medical opinion, Dr. Brown's prescription for a cane was conclusory and lacked the requisite specificity to be reliable, as the ALJ properly recognized. *See id*. at 67 ("for unspecified reasons, Dr. Brown prescribed her a cane."); *see Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("[T]he ALJ is not bound by conclusory statements of doctors, particularly when they are unsupported by detailed objective criteria and documentation.").

Dr. Brown's Order was also at odds with his treatment notes. As the ALJ noted, the previous month, Dr. Brown had reported that Plaintiff was "ambulating normally" at her June 2015 appointment. (Doc. #8, *PageID* #s 67, 882). Furthermore, at this visit, she had normal tone, normal motor strength, normal back curvature and range of motion, and no muscle spasm. *Id*. at 882. These findings were inconsistent with Plaintiff's assertions that she required a cane.

Moreover, in September 2015—after he prescribed the cane—Dr. Brown ordered x-rays of Plaintiff's pelvis and left hip, and both x-rays came back normal. *Id*. at 921, 922-25. Even after he prescribed the cane, Dr. Brown did not explain or further indicate that Plaintiff required an assistive device. In fact, neither he nor any of Plaintiff's treating physicians ever opined that she had any functional limitations at all, either due to hip/pelvic pain, or due to any other impairments. Such lack of evidence further detracts from Plaintiff's

14

asserted need for a cane. *Cf. Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) ("The physicians who treated Ealy for these things never recommended any ongoing significant restrictions.").

Accordingly, substantial evidence supports the ALJ's decision not to include the need for a cane into her residual functional capacity.

**IT IS THEREFORE ORDERED THAT:**

1. The Commissioner's non-disability finding is affirmed; and
2. The case is terminated on the docket of this Court.


March 28, 2018  *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge